**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

_____

| | |
|---|---|
| **MARVIN D. MANNS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | **Case No. 09-CV-2213** |
| ) | |
| **THE CITY OF DECATUR, ILLINOIS,** ) | |
| ) | |
| **Defendant.** ) | |

**<u>OPINION</u>**

This case is before the court for ruling on the Motion for Summary Judgment (#27) filed by Defendant, the City of Decatur, Illinois (City). This court has carefully reviewed the arguments of the parties and the documents filed by the parties. Following this careful and thorough review, the City's Motion for Summary Judgment (#27) is GRANTED.

FACTS[1]

Plaintiff, Marvin D. Manns, is African American and was hired by the City in April 1982. He began working as a water maintenance worker[2] in the City's Water Department in 1990. The general duties of water maintenance worker include servicing water mains, the water valves and the hydrants. Mark O'Connor, the City's Water Distribution Maintenance Supervisor, stated in his affidavit that he supervised Plaintiff for approximately 15 years. O'Connor also stated that the

---

[1] The facts are taken from the City's statement of undisputed facts, Plaintiff's statement of additional undisputed facts, and the documents submitted by the parties. This court has only included facts which are adequately supported by evidence in the record.

[2] It is undisputed that this position now has the job title of equipment operator. When employees holding the position of water maintenance worker retire or are fired, they are replaced with employees who have the title of equipment operator. Plaintiff's job title was always water maintenance worker and he has never held the position of equipment operator. However, the duties for the two positions are identical.

duties of a water maintenance worker "involve a lot of pulling, carrying and lifting." One job assigned to workers in the water distribution area is the job of investigator, or troubleshooter. This person is a first responder and responds to calls regarding problems and issues with water service. During the time he worked as a water maintenance worker, Plaintiff was regularly given the duty assignment of troubleshooter. Troubleshooter was not a full time position, though there was routinely one individual given that assignment on a daily basis. It is undisputed that the person assigned to be the troubleshooter would have to work at a variety of other tasks in addition to his work as a first responder. O'Connor stated in his affidavit that "the troubleshooter needs to use shovels and bars, wrenches and chipping tools, chisels and pipe wrenches."

Plaintiff was injured while on duty for the City in December 2005. Plaintiff was off work for a lengthy period of time. In February 2007, Plaintiff indicated that he wanted to return to work. Plaintiff asked to return to work with a reasonable accommodation for his disabilities and requested that he be allowed to work as troubleshooter on a daily basis. Keith Alexander, Director of Water Management for the City, conferred with Randy Miller, the City's Water Services Manager, and O'Connor, Plaintiff's supervisor, to determine if there was sufficient work for Plaintiff to do in that position. They decided there were not enough light duty troubleshooting tasks available for a full-time position.

In February 2007, Plaintiff was given a functional capacity examination. The examination showed that Plaintiff was at a medium physical capability. Alexander testified that it was his understanding that Plaintiff could perform some manual labor, but not strenuous manual labor. It is undisputed that the restrictions on Plaintiff's physical abilities are permanent in nature. Between 2007 and February 2009, Plaintiff was provided with information regarding openings at the City.

However, he did not receive a placement in any of those positions. On June 17, 2008, Alexander requested permission to hire an equipment operator to perform the duties previously performed by Plaintiff.

In February 2009, Plaintiff and the City settled Plaintiff's worker's compensation claim. In 2009, another functional capacity evaluation was completed for Plaintiff. According to French Wilson, the City's Human Resources Manager, this evaluation showed that Plaintiff was still unable to perform the essential functions of the water maintenance worker position but was capable of performing the functions of a water meter reader. Plaintiff also met with Wilson to review the tasks included in a survey of tasks performed by a water maintenance worker. French asked Plaintiff regarding his ability to perform each task and, based upon his answers, concluded that Plaintiff could not perform far more than 50% of the tasks listed with or without a reasonable accommodation. This survey included numerous tasks which were not listed in the job description for water maintenance worker. Plaintiff testified during his deposition, however, that he agreed that the tasks listed in the survey were "activities that City of Decatur water maintenance workers are called on to do." At his deposition, Plaintiff confirmed that he could not perform many of the tasks listed on the survey.

In July 2009, Plaintiff was offered the position of water meter reader by Ryan McCrady, the City Manager. The water meter reader position is governed by civil service rules which had established a list of eligible applicants for the position. Plaintiff began working as a water meter reader on July 20, 2009. McCrady testified, however, that this position was offered to Plaintiff on the condition that an agreement could be reached with Plaintiff's union, AFSCME, and the Civil Service Commission in order to bypass the civil service rules regarding selection. McCrady testified

that Plaintiff also had to agree to accept the pay rate of the water meter reader position as opposed to the higher pay rate of his previous position, water maintenance worker. On August 24, 2009, Plaintiff was asked to sign an agreement which stated that he agreed to accept the lower rate of pay and which also stated that he was unable to perform the essential functions of the water maintenance worker position. Plaintiff testified that his union did not feel that he had to sign any kind of an agreement and that he did not want to sign the agreement because "[n]o other employee has ever had to sign an agreement." Plaintiff also testified that he was willing to keep working as a water meter reader at the lower rate of pay so long as he could file a grievance regarding the reduction in his pay. Plaintiff testified that he thought he had to sign the paper because of his race. He testified that he lost his job because he "wouldn't sign the paper."

As noted, Plaintiff refused to sign the agreement and he was removed from his position as water meter reader on September 1, 2009. On September 2, 2009, Randy Miller recommended that Plaintiff be fired and Alexander and McCrady concurred on September 16, 2009. On September 16, 2009, Plaintiff received a disciplinary form stating that he was discharged from his employment with the City. The form stated that Plaintiff could not perform the essential functions of his position even with reasonable accommodation and that he was offered an alternative position which he "rejected." McCrady testified that he made the decision to terminate Plaintiff's employment. This decision was made after Plaintiff would not sign the agreement regarding the position as water meter reader and a determination was made by Alexander that Plaintiff could not perform the essential functions of the water maintenance position with or without a reasonable accommodation.

PROCEDURAL HISTORY

On March 14, 2008, Plaintiff filed a charge of discrimination with the Equal Employment

Opportunity Commission (EEOC). Plaintiff claimed that, on February 26, 2007, he was released by his doctor to return to work on light duty with a permanent lifting restriction but the City refused to provide him a light duty position. He alleged that he was discriminated against because of his race. On June 1, 2009, the EEOC issued a dismissal and notice of right to sue.

On September 1, 2009, Plaintiff filed a Complaint (#1) in this court. Plaintiff alleged that the City did not allow him to return to his prior position and instead assigned Plaintiff to perform the duties of water meter reader. Plaintiff alleged that the City refused to pay him the salary he received in his prior position. Plaintiff alleged that he was treated differently than similarly situated non-African American employees. Plaintiff alleged that the City discriminated against him on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, as amended, and in violation of 42 U.S.C. § 1981. It is undisputed that the City received a copy of the Complaint prior to the termination of Plaintiff's employment on September 16, 2009.

On October 2, 2009, Plaintiff filed a new charge of discrimination with the EEOC. Plaintiff stated that he filed suit in federal court on September 1, 2009, and, on September 16, 2009, he was fired. He alleged that he was fired because of his race and in retaliation for filing an EEOC charge and a federal law suit asserting discrimination. On May 7, 2010, the EEOC issued a notice of right to sue within 90 days regarding Plaintiff's second charge of discrimination. On May 17, 2010, Plaintiff filed an Amended Complaint (#6) and added a claim that he was terminated because of his race. On November 10, 2010, Plaintiff filed a Second Amended Complaint (#21). Plaintiff added a claim that the City retaliated against him for complaining about racial discrimination, in violation of Title VII and § 1981.

On May 3, 2011, the City filed a Motion for Summary Judgment (#27) with attached

exhibits. The City argued that Plaintiff could not establish racial discrimination under Title VII or 42 U.S.C. § 1981. The City argued that Plaintiff cannot show that similarly situated employees outside of his classification have been treated more favorably. The City also argued that the chronology of events shows that Plaintiff has not shown a causal connection between either the original filing with the EEOC or the subsequent filing of his federal lawsuit and the employment actions by the City.

On May 27, 2011, Plaintiff filed a Response to Motion for Summary Judgment (#28) with attached exhibits. Plaintiff claimed that there are genuine disputes of material fact which preclude summary judgment. Plaintiff argued that there is a genuine dispute of material fact regarding whether his race was at least a motivating factor in the City's decision to terminate his employment as a water maintenance worker and remove him from the water meter reader position. Plaintiff argued that there are three Caucasian employees who were similarly situated to Plaintiff and were treated more favorably, David Walker, Craig Adams and Jerry Potts. Plaintiff also argued that there is a genuine dispute of material fact regarding whether the City acted in retaliation after he filed his lawsuit. The City filed a Reply Brief (#29) and argued that it is entitled to summary judgment because the Caucasian employees listed by Plaintiff are not similarly situated based upon the applicable case law. The City also argued that Plaintiff has not shown that the reasons given for its employment decisions were pretextual.

The documents submitted by the parties show that David Walker began working for the City in 1975. He worked as an equipment operator in the Public Works Department. He injured his shoulder at work in 1997 and had a lifting restriction of no more than 20 pounds. Because of his lifting restriction, Walker was assigned specific duties, usually driving a sweeper truck, that did not

require lifting more than 20 pounds. Walker was injured again in April 2004 and retired that year as part the settlement of his worker's compensation claim.

Craig Adams works for the City as a crew chief in the Water Services Division. Adams supervises equipment operators and it is undisputed that his job duties as crew chief require him to be able to perform the duties of the employees he supervises. Adams had a workplace injury to his right knee requiring surgery in July 2007. Adams has a permanent restriction of no squatting, no kneeling and no climbing a ladder above ten feet. In January 2008, Adams was allowed to return to work as a crew chief. Joe Nihiser, Adams' supervisor, stated in his affidavit that it "was determined that while the permanent work restrictions would limit Mr. Adams' ability to complete 100% of the functions of his position, he could complete the vast majority of the functions of his position without any accommodation."

Jerry Potts works for the City as a municipal service worker in the City's Public Works Department. He experienced a heart attack in 1995. Following the heart attack, Potts has been restricted to no heavy exertional activities, no heavy lifting over 40 pounds, and no activities that require prolonged strenuous exertion. Potts testified at his deposition that he understood he returned to work in a light duty status. On June 23, 2009, the City reviewed Potts' limitations and ability to continue working using a survey of the essential functions of the municipal service worker position. According to Richard G. Marley, Public Works Director for the City, the review showed that Potts could perform most of the functions of the municipal service worker position without assistance or accommodation. Marley therefore determined that Potts could continue to work within his medical restrictions. Plaintiff has provided copies of evaluations of Potts' job performance over the years which indicate that there were problems with Potts performing many of the functions of his job.

Potts testified that all of his performance evaluations after his heart attack were unfair because he was being evaluated on tasks the City thought a healthy person in his position could perform rather than on tasks he could actually physically perform.

ANALYSIS

SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Singer v. Raemisch, 593 F.3d 529, 533 (7th Cir. 2010). However, a court's favor toward the nonmoving party does not extend to drawing inferences which are only supported by speculation or conjecture. See Singer, 593 F.3d at 533.

The party opposing summary judgment may not rely on the allegations contained in the pleadings. Waldridge, 24 F.3d at 920. "[I]nstead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." Koszola v. Bd. of Educ. of City of Chicago, 385 F.3d 1104, 1111 (7th Cir. 2004), quoting Johnson v. Cambridge

Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003). Specifically, to survive summary judgment, "the nonmoving party must make a sufficient showing of evidence for each essential element of its case on which it bears the burden at trial." Kampmier v. Emeritus Corp., 472 F.3d 930, 936 (7th Cir. 2007), citing Celotex Corp., 477 U.S. at 322-23.

## RACE DISCRIMINATION CLAIM

Plaintiff has argued that he was discriminated against on the basis of his race when he was terminated from his position as water maintenance worker and when he was removed from his position as water meter reader, in violation of Title VII and § 1981. Plaintiff has not argued that he has any direct evidence of discrimination on the basis of his race.[3]

Because Plaintiff has no direct evidence of race-based discrimination, he must proceed under the indirect, burden-shifting approach set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). McGowan v. Deere & Co., 581 F.3d 575, 579 (7th Cir. 2009), cert. denied, 130 S. Ct. 2101 (2010). In fact, Plaintiff has argued that he can make a prima facie case using the indirect method of proof. This court notes that, although Plaintiff has brought his claims under Title VII and § 1981, the methods of proof and elements of the case are essentially identical. McGowan, 581 F.3d at 579. Under the indirect method, Plaintiff must show that: (1) he was a member of a protected class; (2) he was performing his job satisfactorily; (3) he suffered an adverse employment action; and (4) the defendant treated a similarly situated individual outside the protected class favorably. Montgomery v. Am. Airlines, Inc., 626 F.3d 382, 394 (7th Cir. 2010). If Plaintiff can satisfy these elements, thus

---

[3] Plaintiff testified that another employee named Bill told him that O'Connor made a statement about Plaintiff not returning to work at the water department. Plaintiff testified that he believes the statement by O'Connor (that he did not hear) was made by O'Connor because of his race (although race was not mentioned). This court concludes that any testimony regarding this statement would be inadmissible hearsay and, in any case, has no probative value on the issue of race discrimination.

giving rise to an inference of discrimination, the burden would shift to the City to identify a legitimate, nondiscriminatory reason for the action taken. <u>Montgomery</u>, 626 F.3d at 394. If the City was able to do so, the burden then shifts back to Plaintiff to show that the stated reason is merely a pretext for discrimination. <u>McGowan</u>, 581 F.3d at 579. However, Plaintiff "must meet each prong of the prima facie test before it becomes necessary to reach the issue of pretext." <u>Brummett v. Lee Enters.</u>, 284 F.3d 742, 744 (7th Cir. 2002).

In this case, the City has not challenged the first three requirements of a prima facie case but has argued that Plaintiff has not shown that similarly situated persons not in the protected class were treated more favorably. Plaintiff has agreed that what is at issue under both Title VII and § 1981 is the fourth prong of the <u>McDonnell Douglas</u> analysis.

Plaintiff has also argued, however, that he can make a prima facie case that his termination was based on his race by showing that the City's reason for taking its employment actions was a sham, or a pretext for discrimination. Plaintiff argued that it is appropriate to merge the pretext and prima facie case analysis when the reason for the employee's termination is alleged to be a sham designed to hide the employer's discriminatory purpose. Plaintiff has cited <u>Brummett</u> and <u>Leffel v. Valley Fin. Servs.</u>, 113 F.3d 787, 794 (7th Cir. 1997), in support of his argument. This court concludes that the cases cited do not support putting "the pretext cart before the prima facie horse" in this case. <u>See</u> <u>Brummett</u>, 284 F.3d at 744.

In <u>Brummett</u>, the court noted that, in limited circumstances, a plaintiff may be able to meet the second part of the prima facie case without showing that he met his employer's legitimate expectations. <u>Brummett</u>, 284 F.3d at 745. The court stated that "an individual who meets the other criteria for a prima facie case and also demonstrates that the employer's legitimate expectations were

themselves pretextual can survive the [prima facie case requirement] of *McDonnell Douglas*." Brummett, 284 F.3d at 745. The court in Brummett also stated that a merger analysis may be appropriate in cases where the reason for the employee's termination was alleged to be a sham designed to hide the employer's discriminatory purpose. Brummett, 284 F.3d at 745; see also Leffel, 113 F.3d at 794 (based upon the circumstances present in that case, the plaintiff could meet the fourth prong of the prima facie case by showing that it was more likely than not that her disability was the reason for the adverse employment actions taken by the employer).[4]

The Seventh Circuit has recently explained, however, that "[w]hen a plaintiff *produces evidence* sufficient to raise an inference that an employer applies its legitimate expectations in a disparate manner . . . the second and fourth prongs [of the prima facie case] merge–allowing plaintiffs to stave off summary judgment for the time being, and proceed to the pretext inquiry." Montgomery, 626 F.3d at 394 (emphasis in original), quoting Elkhatib v. Dunkin Donuts, Inc., 493 F.3d 827, 831 (7th Cir. 2007). In this case, while Plaintiff has alleged that the City made its employment decisions based upon Plaintiff's race, Plaintiff has not produced any actual evidence of disparate application. See Montgomery, 626 F.3d at 394-95 (the plaintiff was not allowed to proceed to pretext analysis based upon his claims that other non-African American probationary employees were treated more favorably). Therefore, as in Montgomery, Plaintiff may not "put[] the pretext cart before the prima facie horse." See Montgomery, 626 F.3d at 394, quoting Brummett, 284 F.3d at 744. "The prima facie case must be established and not merely incanted." Montgomery, 626 F.3d at 394, quoting Grayson v. O'Neill, 308 F.3d 808, 818 (7th Cir. 2002). Accordingly,

---

[4] This court also notes that, in both Brummett and Leffel, the court concluded that the plaintiff could not meet the requirements of the prima facie case and that summary judgment for the employer was properly granted. See Brummett, 284 F.3d at 745-46; Leffel, 113 F.3d at 794-95.

Plaintiff must "come forward with sufficient evidence of the disparate treatment of similarly situated individuals in order to satisfy his prima facie case." See Montgomery, 626 F.3d at 394.

So, in order to establish a prima facie case of discrimination, Plaintiff must show that at least one similarly situated person not in the protected class was treated more favorably. Plaintiff has argued that, as it pertains to Plaintiff's termination from his position as water maintenance worker, Walker, Adams and Potts are all similarly situated. Plaintiff must show that these putative similarly situated employees were "directly comparable to the plaintiff in all material respects." Montgomery, 626 F.3d at 395, quoting Patterson v. Ind. Newspapers, Inc., 589 F.3d 357, 365-66 (7th Cir. 2009). The "similarly situated" analysis is not a "precise formula" but the Seventh Circuit has stated repeatedly that what is "clear [is] that similarly situated individuals must be very similar indeed." Harvey v. Town of Merrillville, ___ F.3d ___, 2011 WL 2674830, at *5, quoting LaBella Winnetka, Inc. v. Vill. of Winnetka, 628 F.3d 937, 942 (7th Cir. 2010). In the employment context, courts "consider whether the employees at issue had the same job description, dealt with the same supervisor, were subject to the same standards, and had comparable experience, education, and qualifications." Harvey, 2011 WL 2674830, at *5, citing Ajaya v. Aramark Bus. Servs., Inc., 336 F.3d 520, 532 (7th Cir. 2003).

Plaintiff has cited Humphries v. CBOCS West, Inc., 474 F.3d 387 (7th Cir. 2007), aff'd, 553 U.S. 442 (2008), and argues that the definition of "similarly situated" should not be unduly restricted. In Humphries, the Seventh Circuit cautioned that the similarly situated requirement "should not be applied mechanically or inflexibly." Humphries, 474 F.3d at 404, quoting Hull v. Stoughton Trailers, LLC, 445 F.3d 949, 952 (7th Cir. 2006). The Seventh Circuit stated that it has "emphasized that the similarly situated inquiry is a flexible one that considers 'all relevant factors,

the number of which depends on the context of the case.'" Humphries, 474 F.3d at 405, quoting

Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617 (7th Cir. 2000).  The court stated that "courts

should apply a 'common-sense' factual inquiry–essentially, are there enough common features

between the individuals to allow a meaningful comparison?"  Humphries, 219 F.3d at 405, quoting

Chavez v. Ill. State Police, 251 F.3d 612, 636 (7th Cir. 2001).  It is important to remember that "the

purpose of the similarly situated requirement is to eliminate confounding variables, such as differing

roles, performance histories, or decision-making personnel, which helps isolate the critical

independent variable," which in this case is discrimination on the basis of race.  See Humphries, 474

F.3d at 405.  The "fundamental issue remains whether such distinctions are so significant that they

render the comparison effectively useless."  Humphries, 474 F.3d at 405.  The court must ask

"whether there are sufficient commonalities on the key variables between the plaintiff and the

would-be comparator to allow the type of comparison that, taken together with the other prima facie

evidence, would allow a jury to reach an inference of discrimination."  Humphries, 474 F.3d at 405;

see also McGowan, 581 F.3d at 579-80.  The Seventh Circuit has stated:

> Different employment decisions, concerning different employees,
> made by different supervisors, are seldom sufficiently comparable to
> establish a prima facie case of discrimination for the simple reason
> that different supervisors may exercise their discretion differently.

Radue, 219 F.3d at 618.

Plaintiff first argues that Walker is similarly situated because he was an equipment operator,

which is essentially the same position as water maintenance worker, and he was allowed to work

after being injured from 1997 until 2004, when he was injured again and retired.  Plaintiff presented

evidence that Walker was restricted from lifting over 20 pounds and, from 1997 to 2004, was allowed to primarily drive a sweeper truck. Plaintiff argued that Walker was treated more favorably because Plaintiff was not allowed to work primarily as a troubleshooter. This court agrees with the City, however, that Walker cannot be considered similarly situated because the decision to allow him to return to work after his injury was made in 1997, more than 10 years before the decision was made regarding Plaintiff. Walker had retired long before Plaintiff's injury and the decision to terminate Plaintiff's employment was made, and Plaintiff has not shown that any of the same decision-making personnel were involved in the decision regarding Walker. Cf. Humphries, 474 F.3d at 406 (comparator was sufficiently similar where he held the same position, shared the same supervisor and shared the same ultimate decisionmaker). In fact, the evaluations Plaintiff submitted show that Walker's evaluator, supervisor and division manager were all different from the persons who have been identified as being involved in the decisions regarding Plaintiff: Alexander, O'Connor, Miller and McCrady.[5]

Plaintiff next argued that Adams is similarly situated because, as a crew chief, he supervises equipment operators and, as part of his job duties, is required to perform the duties of the employees he supervises. Plaintiff noted that Adams has a permanent restriction of no squatting, no kneeling and no climbing a ladder above ten feet. Plaintiff argued that, with these restrictions, Adams simply cannot perform the essential functions of his job but has been allowed to remain in his position of crew chief. Plaintiff also argued that the position of crew chief is not a management position and Adams can be considered a similarly situated employee who was treated more favorably.

_____

[5] The City has pointed out that McCrady was not hired until 2008, approximately four years after Walker retired.

This court concludes that Plaintiff has not shown that Adams is sufficiently comparable. Although Adams and Plaintiff may have had some of the same job duties, Adams is in a different classification and it is undisputed that he supervises other employees. This would indicate that Adams spends at least part of his day supervising and not performing manual labor. Most importantly, however, Adams had a different supervisor, Joe Nihiser. Because a different decisionmaker made the decision to allow Adams to continue working after his injury in 2007 (Nihiser stated in his affidavit that Adams "could complete the vast majority of the functions of his position without any accommodation"), it would be impossible for a jury to reasonably infer that the decision made by different personnel about Plaintiff was based upon Plaintiff's race. This court further notes that there was a basis for concluding that Plaintiff could not perform more than 50% of the tasks required to perform the position of water maintenance worker, with or without accommodation.

Plaintiff also argued that Jerry Potts is similarly situated. Plaintiff has conceded, however, that Potts held a different position. In fact, Potts also worked in a different department under different supervisors. Plaintiff has strenuously argued that Potts' position actually requires more heavy duty labor than Plaintiff's position as a water maintenance worker and that Potts was nevertheless allowed to continue working after he was restricted to no heavy exertional activities, no heavy lifting over 40 pounds and no activities that require prolonged strenuous exertion. Plaintiff argued that a review of Potts' performance evaluations demonstrates that Potts has not been required to perform heavy manual labor even though his position requires it. This court agrees with the City that Potts cannot be considered similarly situated because he was performing a different job in a different department and the decision to allow him to continue working was made by different

decisionmakers, including Marley, who were not involved in the decision regarding Plaintiff.[6]  See McGowan, 581 F.3d at 580 (employee performing a different job was "not a similarly-situated individual in the first instance").

This court concludes that Walker, Adams and Potts are not sufficiently similar to Plaintiff to allow the type of comparison which would allow a jury to reach a reasonable inference of discrimination.  There are too many other possible reasons for the difference in treatment including, most significantly, that the decisions regarding Walker, Adams, and Potts were not made by the same decisionmakers involved in the employment decisions regarding Plaintiff.  See Radue, 219 F.3d at 618.  Therefore, as far as his termination, Plaintiff has failed to establish a prima facie case of racial discrimination under the indirect method.  See Montgomery, 626 F.3d at 396.

As far as Plaintiff's removal from the position of water meter reader, Plaintiff has not named a similarly situated employee who was treated more favorably.  Plaintiff testified that "[n]o other employee has ever had to sign an agreement" but has not attempted to name an employee not in the protected class who was placed in a civil service position and was not required to sign an agreement in order to stay in the position.  Instead, Plaintiff has argued that the City's reason for removing him from the position, his refusal to sign the agreement, was pretextual because an agreement between the City, the union, and Plaintiff was not necessary for him to continue working as a water meter reader.  Plaintiff provided the affidavit of Jerd Morstatter, president of AFSCME Local 268, in

---

[6]  This court notes that the City has argued that Potts was not similarly situated for the additional reason that Potts' medical condition was not caused by a workplace injury.  It is undisputed that the City has a policy that, if an employee suffers an off-the-job illness, "an attempt will be made to find other, suitable light work."  This policy does not apply to employees who suffer an on-the-job injury.  This is a rather unusual policy which is apparently based upon the fact that employees who suffer on-the-job injuries are entitled to the protections of worker's compensation.  In any case, this court concludes that there are adequate reasons to find that Potts was not similarly situated to Plaintiff without considering this policy.

support of these arguments. Morstatter expressed the opinion that no agreement was necessary based upon the City's written policies. The City, in its Reply, has strenuously argued that there is no foundation for Morstatter's opinions and they should be stricken by this court.

In order to establish a prima facie case of discrimination, however, Plaintiff is required to show that a similarly situated employee was treated more favorably. If no other employee was ever in the same situation as Plaintiff, no reasonable inference of discrimination can be made based upon the City's treatment of Plaintiff. See Kampmier, 472 F.3d at 939 (the plaintiff's claim that no one else was terminated did not satisfy her burden of producing a similarly situated individual who was treated differently). Because Plaintiff has not established a prima facie case of discrimination as to the decision to remove him from the position of water meter reader, this court does not need to reach the issue of pretext.[7]

RETALIATION CLAIM

Plaintiff claimed in his second EEOC charge of discrimination that his employment was terminated in retaliation for filing his first EEOC charge of discrimination and his original Complaint in this court. In his Second Amended Complaint, Plaintiff alleged that the City retaliated against him for complaining about racial discrimination, in violation of Title VII and § 1981. In his Response to the City's Motion for Summary Judgment, Plaintiff argued that the City retaliated against him by terminating him from his job as a water maintenance worker and by removing him from his position as water meter reader.

---

[7] This court concludes that, even if it did reach the issue of pretext, Plaintiff has not shown that the City's reason for its decision was a pretext for discrimination. The City presented evidence that McCrady believed Plaintiff was required to sign an agreement in order to continue in his civil service position. "The pretext analysis focuses on whether the reason was honest and not whether it was accurate or wise." McGowan, 581 F.3d at 579.

"Employers may not punish employees for complaining about workplace conduct that even arguably violates Title VII." Vance v. Ball State Univ., ___ F.3d ___, 2011 WL 2162900, at *9 (7th Cir. 2011), citing 42 U.S.C. § 2000e-3(a). In addition, § 1981 prohibits retaliation by employers against employees for complaints of race discrimination. CBOCS West, Inc. v. Humphries, 553 U.S. 442, 457 (2008). Retaliation claims under § 1981 are subject to the same analysis as those under Title VII. Stephens v. Erickson, 569 F.3d 779, 786 (7th Cir. 2009); see also McGowan, 581 F.3d at 579.

To establish a prima facie case of retaliation under Title VII or § 1981, a plaintiff may use either the direct or indirect method of proof. Vance, 2011 WL 2162900, at *9. Plaintiff has argued that he can make a prima facie case under the indirect method of proof. Under the indirect method, Plaintiff is required to show that: (1) he engaged in statutorily protected activity; (2) he performed his job according to the employer's expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than a similarly situated employee who did not complain of discrimination. Vance, 2011 WL 2162900, at *9; Hill v. Potter, 625 F.3d 998, 1001 (7th Cir. 2010). Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to establish a non-invidious reason for the action. Vance, 2011 WL 2162900, at *9. The burden then shifts back to the plaintiff to show that the defendant's reason was pretextual. Vance, 2011 WL 2162900, at *9. If a plaintiff cannot establish a prima facie case of retaliation, there is no need to reach the issue of pretext. See Brummett, 284 F.3d at 744.

This court concludes that Plaintiff has not established a prima facie case of retaliation. Plaintiff has not shown that he was treated less favorably than a similarly situated employee who did not complain of discrimination. This court has already concluded that the employees Plaintiff

has argued were similarly situated, Walker, Adams and Potts, are not sufficiently similar to Plaintiff to allow the type of comparison which would allow a jury to reach an inference of discrimination. This court now concludes that the same is true regarding an inference of retaliation. Plaintiff has argued that the timing of the City's termination decision supports a finding of pretext. However, because Plaintiff has not shown that any employees who were truly comparable were treated more favorably, this court does not reach the pretext inquiry.

IT IS THEREFORE ORDERED THAT:

(1) The Motion for Summary Judgment (#27) filed by Defendant, the City of Decatur, Illinois, is GRANTED. Judgment is entered in favor of the City and against Plaintiff on all of Plaintiff's claims.

(2) The final pretrial conference scheduled for September 9, 2011, at 3:30 p.m. and the jury trial scheduled for October 3, 2011, at 9:00 a.m. are hereby VACATED.

(3) This case is terminated.

ENTERED this 28th day of July, 2011

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE